[No. 4899.    Decided April 11, 1904.]

L. WILLET, *Appellant*, v. MRS. FELIX WARREN, *Respondent.*[1]

GUARDIAN AND WARD—APPOINTMENT OF GUARDIAN FOR ORPHAN —EVIDENCE — SUFFICIENCY — CLAIM OF RELATIVES — INTERESTS OF WARD CONTROLLING—DECISION OF LOWER COURT—REVERSAL WHERE TESTIMONY IS UNCONTRADICTED. Where, for three years before her death, a widow had left her infant child in the care of W and his wife, who were living in good circumstances in a city with good school, church, and social advantages, and who had shown themselves, peculiarly adapted to the care and custody of the child, to whom they had become greatly attached, and the child, although of non-consenting age, desired to remain with them, it is error, on the death of the mother, to refuse to appoint W guardian of the infant, and to appoint as guardian an aunt living in the mountains in Idaho, who had never before shown any interest in the child, although a prosperous person of good

[1]Reported in 76 Pac. 273.

character, consanguinity alone appearing to be the only reason entitling her to the preference; and the evidence being brief and practically uncontradicted, the supreme court will not hesitate to reverse the lower court, since the interests of the ward are controlling, and relatives have no legal right to the appointment.

Appeal from an order of the superior court for Spokane county, Kennan, J., entered January 17, 1903, upon conflicting applications for the guardianship of a minor after a hearing on the merits. Reversed.

*John M. Gleeson,* for appellant.

*Del Cary Smith* and *A. J. Laughon,* for respondent.

DUNBAR, J.—This is an appeal from an order refusing to appoint this appellant, L. Willet, guardian of Mildred Strong, a minor, and appointing respondent,. Mrs. Felix Warren, as such. Mrs. Betty Strong, the mother of the minor, was left a widow several years ago, with an infant child, Mildred, depending upon her for support. Something over three years before the commencement of this action, Mrs. Strong placed Mildred in the care and custody of the appellant and his wife, in the city of Spokane, where, with the exception of absences a time or two on brief visits, she has continuously remained, and is now, in their care and custody. It was the agreement, when Mildred was placed in the home of the Willets, that her mother should pay her board and necessary expenses for taking care of her, which she did for some time. But this consideration ceased after a time, and the child was allowed to stay with the Willets, where she was provided with the necessaries of life and sent regularly to school and church.

In October, 1902, Mrs. Strong became seriously ill, and went to the home of her sister, the respondent, in the state of Idaho, where she died in a few days. After

the death of Mrs. Strong, the respondent came to the
city of Spokane and filed a petition, asking that she be
appointed guardian of the said Mildred. The appellant
filed objections, and also a petition asking that he be ap-
pointed guardian of the minor, Mildred Strong. After
hearing the respective applications, which were heard to-
gether, the court appointed the respondent, who is the
aunt of the minor child, her guardian, and from this judg-
ment of appointment this appeal is taken.

The testimony in this case is brief, and we have care-
fully examined it, and, while ordinarily in a case of this
kind the judgment of the lower court would have great
weight with an appellate court, in this case the testimony
is all here and practically uncontradicted. The minor
is absolutely without estate, so that there is no question
of financial motive attributed to either of the applicants.
And the court found that both applicants were of good
moral character, and that each was capable of supporting
the minor in accordance with her station in life. The
court presumably awarded the guardianship to the re-
spondent on the sole ground that she was related by con-
sanguinity to the minor, and, everything else being equal,
we think this would be a just determination.

But in this case, during the life of the mother, the
relatives had not in any way assisted in maintaining this
minor, but such assistance had been rendered exclusively
by the appellant and his wife. She had lived with them
for over three years. The undisputed testimony is that
a great attachment had grown up between the Willets
and Mildred. They had advanced her interests at the
sacrifice of their own private means. They had sent her
continuously to the public schools in the city of Spokane;
had prepared her for Sunday school, and sent her regu-

larly to the Methodist Sunday school in that city. Her. teachers testified that she seemed to be well taken care of. She herself testified that she was satisfied with the Willets, that she was attached to them, and did not want to leave them and go and live with her aunt. And, while it is true that she is not of a choosing age, so far as the law is concerned, her choice, even at a younger age, is a circumstance to take into consideration in her disposition.

The relatives have no legal right to her custody, and the main consideration is the welfare of the child. While, as we have before said, the ties of natural. affection are not to be disregarded, yet it does not always follow that these ties exist because of kinship or consanguinity. The respondent and her husband are not residents of this state. They live in Idaho, and, while their good character seems to be established by the testimony, and undisputed, their circumstances, it seems to us, do not present as favorable conditions for the rearing of the child as do the circumstances of the Willets. The Warrens in the summer time live on a mountain, some forty miles from Lewiston, in Idaho, where Mr. Warren keeps a stage station and hotel, or wayside house. It does not appear where they live in the winter time, but it is conceded that they are residents of the state of Idaho. The Willets are residents of the city of Spokane, in good circumstances, convenient to schools, churches, Sunday schools, and society. The court found, that the appellant and his wife were in comfortable circumstances; that they cared for and educated Mildred in the public schools of Spokane, and sent her regularly to Sunday school, during the time that she was with them; that they are able, financially, to care for and educate her; and that they

are of good moral character. The testimony of the neighbors was to the effect, that Mrs. Willet was peculiarly adapted to the care and custody of the child; that she had lost a child of her own about Mildred's age, shortly before she took charge of her; that Mrs. Strong was recommended to send Mildred to Mrs. Willett by neighboring women who knew the latter, and had known her for a long time, and who testified that they would be glad to have her take charge of their own children, in case of their decease. And, while the record discloses nothing against the character of the respondent and her husband, it seems to us, under all the circumstances of this case—in consideration of the comparative locations of the different applicants, one being outside of the jurisdiction of this court, and the other within it; in consideration of the fact that the appellant and his wife have been tested, and found to be worthy of her custody, and that a mutual affection and attachment exist between the Willets and the minor, and that the school, church, and society privileges of the ward would be more surely secured under the guardianship of the appellant and his wife—that it would be more in conformity with justice, and to the best interest of the ward, that the relationship existing between Mildred and the Willets should not be disturbed, and that she should be allowed to remain in the house that has sheltered and protected her for so long, until she arrives at the age when she can choose her own guardian.

The judgment is reversed, with instructions to the lower court to grant the petition of the appellant.

FULLERTON, C. J., and HADLEY and MOUNT, JJ., concur.